IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:10-CV-173-FL

| | |
|---|---|
| LISSA M. ROHLIK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>I-FLOW CORPORATION, )<br>)<br>Defendant. ) | **ORDER** |

This case comes before the court on a motion (D.E. 49) by plaintiff Lissa Rohlik ("plaintiff") to compel discovery from defendant I-Flow Corporation ("defendant"). The motion has been fully briefed.[1] It has been referred to the undersigned for disposition pursuant to 28 U.S.C. §636(b)(1)(A). (*See* Minute Entry after D.E. 69). For the reasons set forth below, the motion will be allowed in part and denied in part.

## BACKGROUND

Plaintiff commenced this products liability action on 3 September 2010. (*See* Compl. (D.E. 1)). In her complaint, she alleges that in 2006 she was experiencing pain in her left shoulder. (*Id.* ¶ 14). She consulted with a surgeon and underwent routine arthroscopic surgery on the shoulder on 19 December 2006. (*Id.* ¶ 15). Following surgery, a continuous infusion therapy device, or so-called "pain pump," manufactured by defendant was affixed to her shoulder, which injected anesthetic on a continuous basis. (*Id.* ¶ 15). After the initial healing process, plaintiff again began to experience pain in the shoulder. (*Id.* ¶ 16). She underwent a second arthroscopic surgery on the shoulder on 18 December 2007. (*Id.* ¶ 18). She was

---

[1] In support of her motion to compel, plaintiff filed a memorandum (D.E. 50) and declaration (D.E. 53) with exhibits (D.E. 53-1 through 53-13). Defendant filed a memorandum (D.E. 66) and exhibit (D.E. 66-1) in opposition. Plaintiff filed a reply (D.E. 68) with exhibits (D.E. 68-1 through 68-3).

diagnosed with chronrolysis, causing serious and permanent cartilage damage, which she alleges was related to the use of the pain pump in conjunction with her first surgery. (*Id.* ¶ 20).

In her complaint, plaintiff asserted several causes of action arising under state law, including negligence, negligent misrepresentation, fraud, breach of implied warranty, breach of express warranty, and unfair and deceptive trade practices. (*Id.* ¶¶ 28-114). The court previously dismissed plaintiff's negligent misrepresentation, fraud, and unfair and deceptive trade practices claims and struck her request for attorney's fees. (7 July 2011 Order (D.E. 28)). Her claims for negligence, breach of implied warranty, and breach of express warranty, along with her request for punitive damages, remain in the case. (*Id.*). Defendant denies the material allegations in plaintiff's remaining claims. (*See generally* Ans. to Compl. (D.E. 31)).

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought

2
Case 7:10-cv-00173-FL   Document 75   Filed 05/07/12   Page 2 of 8

may be relevant to the claim or defense of any party.'" *Equal Employment Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). Rule 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B).

## II. PLAINTIFF'S MOTION TO COMPEL

On 4 October 2011, plaintiff served on defendant her first set of interrogatories and requests for production. (D.E. 51-1). Defendant served its initial responses on 11 November 2011. (D.E. 51-2). Following a meet and confer session between the parties, defendant served amended responses on 5 December 2011. (D.E. 51-6).

Plaintiff filed the instant motion to compel on 9 December 2011. The court held a telephone discovery conference with the parties on 11 January 2012. (*See* 12 Jan. 2012 Order (D.E. 56)). The court resolved some of the parties' disputes at the conference and directed them to file supplemental briefing on the two issues that remain—the relevant time period for which discovery may be obtained and the applicability of the attorney-client privilege to certain documents. (*Id.*). The parties have complied. The court will address each of the issues in turn below.

### A. Time Period Subject to Discovery

In responding to a number of plaintiff's discovery requests, defendant limited its responses to the period from 19 December 2001 to 19 December 2006, the date of plaintiff's first shoulder surgery. Defendant contends that because the sole focus of plaintiff's claims is the events leading up to her first surgery, when defendant's pain pump was used, information

relating to any subsequent events is not relevant to her claims. Plaintiff contends that, to the contrary, the relevant period extends at least another year, through the date of her second shoulder surgery on 18 December 2007. The court agrees with plaintiff.

In the first instance, plaintiff has demonstrated that, while the parties agree that discovery regarding plaintiff's first surgery is relevant, using the date of the first surgery as the discovery cut-off would preclude production of documents relating to that surgery, such as billing records generated after the surgery. Second, and more fundamentally, while information occurring after her initial shoulder surgery may or may not be admissible to prove plaintiff's claims at trial, it does not render the information immune from discovery. Indeed, the standard for discoverability is not coterminous with that of admissibility and is much broader. Fed. R. Civ. P. 26(b)(1); *Frank Betz Assoc., Inc. v. Jim Walter Homes, Inc.*, 226 F.R.D. 533, 536 (D.S.C. 2005) (holding that the standard for whether to allow motion to compel discovery is not limited by whether the information is admissible under the Rules of Evidence). In addition, over defendant's objection, this court has already ruled that information concerning subsequent remedial measures is discoverable, and presumably some of the information sought potentially relates to such measures. (*See* 13 Jan. 2012 Order (D.E. 62)). Further, in support of its affirmative defenses, defendant itself relies on a technical bulletin dated 7 August 2007, subsequent to its proposed discovery cut-off date of 19 December 2006. (*See* Chart of Documents Supporting Affirmative Defenses (D.E. 53-8) 1). Finally, defendant has not demonstrated that inclusion of the additional year sought by plaintiff in the period for discovery would be unduly burdensome. Certainly, defendant has not shown that there is anything about the nature or volume of discovery for the additional year that would make its production any more burdensome than the production it has already made for the preceding five years.

The court accordingly ALLOWS this aspect of plaintiff's motion. No later than 21 May 2012, defendant shall supplement its responses to plaintiff's first set of interrogatories and requests for production to include responsive information and documents for the period 19 December 2001 and through 18 December 2007. The supplemental interrogatory answers shall, of course, be accompanied by a verification. *See* Fed. R. Civ. P. 33(b)(3). Similarly, the supplemental production shall be accompanied by a response signed by counsel. *See* Fed. R. Civ. P. 26(g)(1).

### B. Objections to Attorney-Client Privilege Designations

Plaintiff challenges a number of defendant's privilege designations. Defendant contends that all withheld documents are entitled to protection pursuant to the attorney-client privilege. Following a discussion of the applicable principles, the court will address plaintiff's objections.

#### 1. Attorney-Client Privilege

The attorney-client privilege exists when (1) there is an attorney-client relationship, (2) the communication in question relates to a fact that the attorney learned from the client, outside the presence of strangers, for the purpose of securing a legal opinion or legal services, and (3) the privilege has been claimed and not waived. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). The attorney-client privilege is designed "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). If a party demonstrates that the attorney-client privilege applies, all communications between attorney and

5

client are entitled to absolute and complete protection from disclosure. *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997).

In *Upjohn*, a corporation's in-house counsel conducted an investigation which included completion of questionnaires by and interviews of employees. 449 U.S. at 387-89. The Supreme Court held that the attorney-client privilege protected both the written questionnaires and the notes of interviews. The Court explained that "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at 390-91. Accordingly, fact finding which is necessary to the provision of legal advice is worthy of the attorney-client privilege. *Id.* at 391 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *see also F.C. Cycles Intern., Inc. v. Fila Sport*, 184 F.R.D. 64, 70-71 (D. Md. 1998) ("Communications between corporate counsel and company personnel are privileged so long as the information is relayed for the purpose of obtaining legal advice. The communications retain their privileged status if the information is relayed from a non-lawyer employee or officer to other employees or officers of the corporation on a need to know basis." (citations omitted)).

To validly claim a privilege, a party must expressly assert it in response to the particular discovery request involved and serve with its discovery responses a privilege log in conformance with Rule 26(b)(5)(A). "When a party relies on a privilege log to assert these privileges [*i.e.*, attorney-client privilege and work product protection], the log must 'as to each document . . . set [ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'" *Kelly v. U.S.*, No. 7:10-CV-172-FL, 2012 WL 874829, at *6

(E.D.N.C. 14 Mar. 2012) (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y.1993)).

### 2. Challenged Designations

Here, defendant has provided a privilege log for each of its withheld documents.[2] (*See* D.E. 53-10). For each document, the privilege log lists: the Bates number, type of document, date, privilege asserted, summary, author, and recipient. (*Id.*). Plaintiff argues that the privilege log does not describe the nature of the withheld documents sufficiently to enable plaintiff to assess the claim of privilege. The court disagrees.

Having reviewed the privilege log, the court finds that defendant has met its burden of establishing that the attorney-client relationship existed with respect to each of the documents in question and that they discuss or otherwise relate to defendant's securing legal opinions. Of course, the court does agree with plaintiff that if only certain portions of withheld documents relate to legal advice, only those portions should be withheld or redacted and the remaining portions produced. If defendant is withholding any such documents not relating to attorney advice, it shall produce them no later than 21 May 2012, along with the other document production required herein. Beyond speculation, however, there is no indication that the withheld documents are not privileged in their entirety, and the court trusts defendant's attorneys, as officers of the court, to appropriately make such determinations. Accordingly, this portion of plaintiff's motion to compel is DENIED.

### C. Expenses

Although plaintiff's motion to compel is allowed in part, the court finds that an award of expenses is not warranted because defendant's objections to the discovery requests were

---

[2] Defendant has withdrawn its claim of privilege with respect to a number of documents identified in its privilege log and reserves its claim of privilege only as to those documents responsive to plaintiff's request for production no. 24. (Def.'s Opp. Mem. (D.E. 66) 11).

substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). The court therefore declines to award any expenses incurred in connection with the motion.

## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that plaintiff's motion (D.E. 49) to compel discovery is ALLOWED IN PART and DENIED IN PART on the terms set forth above. Each party shall bear its own expenses incurred in connection with the motion.

SO ORDERED, this the 7th day of May 2012.

James E. Gates
United States Magistrate Judge